UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIE CARSON,

                              Petitioner,

                                                              DECISION AND ORDER

-vs-

                                                                 16-CV-6639 (CJS)

DALE ARTUS, SUPERINTENDENT
OF ATTICA CORRECTIONAL FACILITY,

                              Respondent.
_____

APPEARANCES

For Petitioner:                     Willie Carson, *pro se*
                                       12-B-2304
                                       Attica Correctional Facility
                                       Box 149
                                       Attica, NY 14011

For Respondent:                 David Anthony Heraty
                                       Donna Milling
                                       Erie County District Attorney's Office
                                       200 Erie County Hall
                                       25 Delaware Avenue
                                       Buffalo, NY 14202

INTRODUCTION

The petitioner, Willie Carson ("Carson" or "Petitioner"), is currently incarcerated and brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Carson challenges his conviction on one count of Burglary in the First Degree, one count of Attempted Robbery in the First Degree, and one count of Attempted Robbery in the Second Degree. For the reasons explained below, the petition for a writ of habeas corpus is denied.

BACKGROUND

The crimes for which Carson was convicted occurred on Monday, April 6, 2009. At approximately 11:00 a.m. that morning, Kalela Carter was seated on her couch playing a video game in the living room of her first floor apartment at 362 Huntington Avenue in the city of Buffalo, New York. Trial Tr. vol. 4, 423 Feb. 2, 2012. Her boyfriend, Sam Rose, was suffering from the flu and was asleep in the bedroom at the rear of the apartment. *Id.* at 423–424. Suddenly, Carter's door was kicked in and two black males entered. *Id.* at 424. One of the males was taller, and wore "cargo sweatpants" and a dark hoodie; and the other male was shorter, and wore designer "Coogi" jeans and a dark hoodie. *Id.* at 425–427, 437, 450.

The taller intruder immediately moved towards Ms. Carter, held an object that appeared to be a gun to the back of her neck and had her get down on the ground. *Id.* at 425–426. The shorter male continued through the house searching for money and drugs. *Id.* at 427, 431. At some point, Ms. Carter began struggling with the taller intruder, managed to wrestle the apparent gun from his grip, and realized it was actually just a snow brush. *Id.* at 429–430. Ms. Carter then reached for her phone to call for help, and the taller intruder pulled out a real gun. *Id.* at 434. A shot was fired into the ceiling, at which point Carter's boyfriend awoke and began to emerge from the back room. *Id.* at 435. The intruders fled the apartment, and Ms. Carter chased them out into the street screaming for her neighbors to help. *Id.* at 410, 440–441. Multiple neighbors called 911. *Id.* at 398–399, 416. As Ms. Carter recalls it, the entire episode lasted some twenty to twenty-five minutes. *Id.* at 436.

Lieutenant Dawn Kent of the Buffalo Police Department was on patrol that day, and proceeded toward the scene upon hearing the radio dispatch. Trial Tr. vol. 3, 359 Feb. 1, 2012. The dispatch stated that a home invasion had occurred, and that suspects "had fled and maybe headed towards Depew Avenue." *Id.* The suspects were described as "two black males wearing

2

dark jeans or pants and dark hoodies." *Id.* On Depew Avenue, just a few blocks away from the scene of the home invasion, Lieutenant Kent saw Carson sprinting across the street dressed in a white t-shirt with mud splatters and dark pants. *Id.* at 360–361, 372. Lieutenant Kent thought this was suspicious as a t-shirt was inappropriate for the weather. *Id.* She immediately exited her patrol vehicle and ordered Carson to stop. *Id.* Carson complied, and Lieutenant Kent transported him back to the scene of the crime to conduct a "show-up" identification with Ms. Carter. *Id.* at 368; Wade Hrg. Tr., 59, Jul. 2, 2010. It is unclear what instructions Ms. Carter was given prior to the "show-up," but at the scene Ms. Carter was given the opportunity to see Carson and identify him as one of the intruders, which she did. Wade Hrg. Tr. at 61.

Prior to trial, Carson filed at least two motions. First, Carson moved to suppress Ms. Carter's identification on the grounds that the "show-up" identification procedure used by the police was unduly suggestive. Wade Hrg. Tr., 21, Oct. 13, 2010. The trial court agreed with Carson that the show-up identification was unduly suggestive, but ultimately allowed Ms. Carter's in-court identification testimony because it found an adequate independent basis for a reliable identification, namely the ample opportunity she had to observe the perpetrators during the home invasion. *Id.* at 23; Mem. and Order, 1, Aug. 16, 2011. Second, Carson moved to dismiss the indictment due to lack of "probable cause" for his detention and arrest by Lieutenant Kent. Mem. and Order at 1. The trial court found that, under the particular circumstances, Lieutenant Kent properly formed a reasonable suspicion that Carson was one of the fleeing suspects. *Id.* at 5–7.

On February 6, 2012, Carson was convicted after a jury trial on one count of Burglary in the First Degree, in violation of New York Penal Law § 140.30; one count of Attempted Robbery in the First Degree, in violation of New York Penal Law § § 110/160.15; and one count of

Attempted Robbery in the Second Degree, in violation of New York Penal Law § § 110/160.10. On July 23, 2012, the trial court sentenced Carson to thirteen years of incarceration.

Carson timely filed a direct appeal raising six issues: (1) the trial court erred in failing to suppress the identification testimony because it was the product of an unduly suggestive police procedure; (2) the trial court should have granted Carson's motion to suppress where there was no reasonable suspicion or probable cause for his stop, detention and arrest; (3) the verdicts were against the weight of the evidence; (4) prosecutorial misconduct deprived Carson of his constitutional right to a fair trial; (5) the trial court erred in denying Carson's state law claim of juror misconduct; and (6) Carson's sentence was harsh and excessive. *People v. Carson*, 997 N.Y.S.2d 881 (N.Y. App. Div. 2014). The New York State Supreme Court, Appellate Division Fourth Department ("the Appellate Division") affirmed the judgment of the trial court. *Id.* Carson then applied for a certificate granting leave to appeal to the New York Court of Appeals, but the application was denied. *People v. Carson*, 25 N.Y.3d 1161 (N.Y. 2015).

Carson is now before this Court *pro se* seeking a writ of habeas corpus. The Court is in possession of, and has reviewed, the state record, including transcripts of the hearings and trials, and Petitioner's direct appeal to the Appellate Division and the New York Court of Appeals. Petitioner has not challenged the record below as inaccurate. Accordingly, the Court finds an evidentiary hearing unnecessary.

Further, 28 U.S.C. § 2244(d)(1) provides a one-year statute of limitations for review of federal habeas corpus petitions filed by state prisoners. Where a habeas petitioner does not file a petition for certiorari in the United States Supreme Court, the petitioner's state court conviction becomes final, for purposes of triggering the one-year limitations period in which to seek habeas relief, 90 days after the application for leave to appeal to the relevant state's highest court is denied. *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (citing U.S. Sup. Ct. R. 13, "Review

4

on Certiorari: Time for Petitioning"). In the instant case, because Petitioner did not seek certiorari in the Supreme Court, his conviction became final on September 16, 2015, i.e., 90 days after the June 16, 2015 denial of leave to appeal to the Court of Appeals. Accordingly, Petitioner's habeas petition, filed on September 7, 2016, is timely.

LEGAL STANDARD

Carson brings his habeas corpus petition pursuant to 28 U.S.C. § 2254. The general legal principles applicable to such a claim are well settled. Federal courts are obliged to give deference to state courts' decisions. *See Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (citing The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214). For claims adjudicated on the merits in state court, a federal court may issue a writ of habeas corpus only when the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." *Id.* (quoting 28 U.S.C. § 2254(d)(1)).

A principle is "clearly established Federal law" for § 2254 purposes when it is embodied in a Supreme Court holding framed at the appropriate level of generality. *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (quoting, *inter alia*, *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)), *cert. denied*, 138 S. Ct. 2578. A state court decision is "contrary to" such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law, or has "decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Washington*, 876 F.3d at 403 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). An "unreasonable application" of such clearly established law occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case such that "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Washington*, 876 F.3d at 403 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

## DISCUSSION

In his petition, Carson argues (i.) that Ms. Carter's identification testimony should have been suppressed due to an unduly suggestive police procedure; (ii.) that the arresting officer lacked probable cause for stopping him; (iii.) that his rights were violated by juror misconduct; and (iv. and v.) that he was deprived of his rights to a fair trial both by numerous acts of prosecutorial misconduct during summation, and by his attorney's failure to properly object to the prosecutor's misconduct. Because Carson is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

i. <u>The State's Identification Procedures</u>

Carson contends that his Fourteenth Amendment rights were violated when the trial court declined to suppress Ms. Carter's identification testimony as the product of an unduly suggestive "show-up" identification procedure. The Court finds that the trial court's decision was neither "contrary to," nor did it involve an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1).

Show-up identifications violate due process when they are conducted in a manner that renders them "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 302 (1967). However, even if the identification procedures are found to be unnecessarily suggestive, the identification evidence need not be excluded if "under the totality of the circumstances the identification was reliable." *Neil v. Biggers*, 409 U.S. 188, 199 (1972) (quotation omitted). The

6

Supreme Court has identified five indicia of reliability to consider when evaluating the admissibility of an identification:

> (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*Casillas v. Murray*, 662 F. Supp. 2d 300, 312–14 (W.D.N.Y. 2009) (quoting *Biggers,* 409 U.S. at 199–200).

This Court will assume the trial court properly concluded the show-up identification procedures used by the police in this case were unnecessarily suggestive, and proceed to a consideration of the *Biggers* indicia of reliability. The first factor weighed in favor of admission, as Ms. Carter had ample opportunity to observe Carson during the commission of the crime. The invasion lasted up to 25 minutes, during the day, in bright light, and the intruders were not wearing masks. Trial Tr. vol. 4, 428; Wade Hrg. Tr. at 17. As Ms. Carter testified, Carson was very close to her for nearly the entire episode and she got several good looks at his face. Trial Tr. vol. 4 at 428, 436. The second factor also weighs in favor of admissibility. Ms. Carter testified that she was "scared at first," but that "at some point [she] just got over it." *Id.* at 427, 431. The fourth and fifth factors also weigh in favor of admissibility, as Ms. Carter harbored "no question at all that Carson was the one," and the initial confrontation occurred within forty-five minutes of the crime. Wade Hrg. Tr., 9, Oct. 13, 2010; Wade Hrg. Tr., 83, Jul. 2, 2010.

There was some ambiguity with respect to the third factor, "as the witnesses' initial descriptions of the defendant were somewhat vague, generalized, and lacking in detail." *Rock v. Conway*, 470 F. App'x 15, 17 (2d Cir. 2012). However, after a review of the totality of the circumstances, this Court finds that the trial court's ruling was not contrary to, or an unreasonable application of, established Federal law.

7

ii. The State's "Probable Cause" for Stop, Detention and Arrest

Carson argues that his motion to suppress should have been granted where there was no reasonable suspicion or probable cause for Carson's stop, detention and arrest. The Court finds that the trial court's decision was neither "contrary to," nor did it involve an unreasonable application of, clearly established Federal law with respect to its finding that Lieutenant Kent had probable cause to stop, detain and arrest Carson. 28 U.S.C. § 2254(d)(1).

The Supreme Court has consistently explained that "probable cause is a fluid concept— turning on the assessment of probabilities in particular factual contexts." *See United States v. Gaskin*, 364 F.3d 438, 456–57 (2d Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). Probable cause exists "where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949). To determine whether an officer had probable cause to arrest an individual, a court must examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *United States v. Lucas*, 817 F. Supp. 2d 151, 158–59 (W.D.N.Y. 2010) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996), *aff'd*, 462 F. App'x 48 (2d Cir. 2012).

A review of both the record and the trial court's opinion with respect to whether Lieutenant Kent had probable cause to stop, detain, and arrest Carson leaves no doubt that the trial court's decision was consistent with established Federal law:

> The evidence established that Lieutenant Kent was responding to the radio dispatched call of a burglary in progress. A description put over the police radio was that a black female was chasing two black males, wearing blue jeans and dark hoodies from Huntington and Wallace Avenues, down Wallace Avenue toward Depew Avenue. Lieutenant Kent provided credible testimony that she took a route

8

> which put her at Depew and Linden Avenues based upon the information she received over the police radio that the suspects were heading in that direction.
>
> When Lieutenant Kent arrived at Depew and Linden Avenues, she observed a black male running southbound across Depew Avenue . . . Lieutenant Kent noted that she apprehended [Carson] not merely because he was running, but due to his proximity to the crime scene. Lieutenant Kent also noted that the Defendant had on dark blue or black jeans . . . the seizure of [Carson] was also very close in time to the commission of the crime being investigated by the officers . . .
>
> Therefore, this Court finds that there was sufficient probable cause for the police action at issue.

Mem. and Order, at 4–6.

### iii. Juror Conduct

Carson asserts that the trial court erred in denying his motion pursuant to New York Criminal Procedure Law § 330.30(2) because a juror engaged in misconduct affecting Carson's substantial rights. Specifically, Carson alleges that his substantial rights were affected when Juror Izeal Bullock did not disclose to the trial court during jury selection that defense co-counsel was representing a party adverse to Juror Bullock in a contemporaneous family court proceeding. The Court finds that the trial court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established Federal law with respect to its finding that there was no juror misconduct affecting Carson's substantial rights. 28 U.S.C. § 2254(d)(1).

New York CPL § 330.30(2) allows the trial court to set aside or modify a verdict if the defendant can show that "during the trial there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict." N.Y. Crim. Proc. Law § 330.30(2) (McKinney). In considering this issue, the Court notes that "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting

9

the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller–El v. Cockrell*, 537 U.S. 322, 339 (2003).

The record shows that despite the opportunity following his conviction to submit papers and hold two hearings on the matter, Carson was able to show only that defense co-counsel was involved in co-representing a party opposed to one of the jurors in a family court matter. 330.30 Hrg. Tr., 3–44, June 22, 2012. Juror Bullock testified before the trial court that he didn't realize defense co-counsel was involved in his family court matter until he saw co-counsel at the family court until a hearing on February 8, 2012. *Id.* at 29. Carson was convicted on February 6, 2012. Cert. Conv., Dec. 20, 2016. There is no evidence of improper conduct by Juror Bullock.

In light of the testimony at the hearing, the trial court's decision not to award CPL 330.30 relief was not "objectively unreasonable." *Miller–El*, 537 U.S. at 339. Furthermore, Carson has not presented any clear and convincing evidence showing that the state court's decision was objectively incorrect. *See Robinson v. Conway*, No. 05-CV-6091P, 2009 WL 4067405, at *10 (W.D.N.Y. Nov. 23, 2009).

iv.   The Prosecutor's Conduct on Summation

Carson claims that he was deprived of his constitutional rights to a fair trial and due process by numerous acts of prosecutorial misconduct during summation. Pet., 5–6, Sept. 19, 2016, ECF No. 1. The test for an alleged denial of due process based upon prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219 (1982); *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974). The prosecutor's statements have to have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 182 (1986). In determining the degree of prejudice to a petitioner, the factors to consider are the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction based on the evidence

absent the misconduct. *United States v. Young*, 470 U.S. 1, 12–14 (1985). Isolated passages of a prosecutor's argument, even if imperfect, do not suggest that a jury will be so profoundly affected as to affect the fundamental fairness of a trial. *Donnelly*, 416 U.S. at 646–47.

Initially, the Court observes that in addition to the six statements to which Carson's counsel objected at trial, Petitioner references numerous other statements that allegedly constituted prosecutorial misconduct. Pet. at 5–6. As the New York Appellate Division found, however, defense counsel did not object to these statements at trial so they were not preserved for review. *People v. Carson*, 997 N.Y.S.2d 881 (N.Y. App. Div. 2014). *See also, Garvey v. Duncan*, 485 F.3d 709, 714–15 (2d Cir. 2007). The Court thus addresses only the same six statements that drew and objection from counsel.

Before examining the prosecutor's statements, the Court wishes to note the trial court's instructions to the jury for summation. The trial court stated:

> Keep in mind you are the sole fact finders in the case and it is for you alone to determine from the evidence that you find to be credible whether or not the defendant is guilty of the charges . . . . The attorneys will have some latitude in their closing argument to comment on the law, but please remember that at the end of the day, you must follow the law as I instruct you just prior to your deliberations . . . . Now, if during summations I sustain an objection to a comment made on one side or the other, that comment will be stricken and you must disregard it.

Trial Tr. vol 6, 752–753, Feb. 6, 2012. In that context, the Court now turns to the alleged prosecutorial misconduct.

The first alleged improper statement by the prosecutor was that "to find this defendant is not guilty, you must conclude [Ms. Carter] is lying." *Id.* at 769. Defense counsel objected on the basis that the prosecution was misstating the standard. The judge gave a curative instruction to the jury that "this is counsel's argument as an advocate and if you find that my instructions are different from what counsel tells you, you must apply the standard as I give it to you." *Id.* at 770.

11

The second objectionable statement came during the prosecutor's summary of Ms. Carter's testimony when he said, "she came in here and told the truth." *Id.* at 773. Defense counsel objected that the prosecution was commenting on the credibility of a witness. *Id.* The trial court sustained the objection. *Id.*

The third objection came when the prosecutor was attempting to anticipate a defense theory. The prosecutor stated, "So now all the police are lying too. They're all lying because they all want to get Willie." *Id.* at 786. The defense objected on the basis that it was an improper comment on the credibility of the witnesses. *Id.* at 786–787. The trial court instructed the jury that the prosecutor's comments must be disregarded.

The fourth, fifth and sixth objections came consecutively. First, the prosecutor referred to a date noted on the back of a photograph in evidence, and defense objected that there was no evidence of when the photograph was taken. *Id.* at 790. The trial court allowed it. *Id.* After the court allowed his reference to the dated photograph, the prosecutor then spoke to the jury, "Ladies and gentlemen, don't be distracted by this stuff, this snow job, okay?" *Id.* Defense objected and the trial court sustained. *Id.* at 791. After the trial court sustained the fifth objection, the prosecutor said, "And don't be fooled by this defendant and how he appears today in court." Defense objected on the basis that prosecutor can't comment on the defendant's appearance in court. The trial court sustained and provided the following curative instruction, "To the extent there's any comment on how he appears today, the objection is sustained." *Id.* at 791.

The Court agrees with the New York Appellate Division that the prosecutor's misconduct did not rise to the level of creating a fundamentally unfair trial. Carson's conviction was neither "contrary to," nor did it involve an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1).

v.       Defense Counsel's Response to the Prosecutor's Conduct

Carson also believes that his own attorney's failure to properly object to the prosecutor's repeated inappropriate remarks during summation denied him due process and a fair trial. However, Carson raised this issue for the first time in his application for a certificate granting leave to appeal to the New York Court of Appeals and not in his direct appeal.

Before seeking habeas relief under 28 U.S.C. § 2254, "[a] habeas petitioner must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Typically, this means a petitioner's federal claims must have been included in both the petitioner's appeal to the state's intermediate appellate court and in an application for permission to appeal to the state's highest court. *Sigl v. New York*, No. 14-CV-6383-CJS, 2015 WL 4429430, at *4 (W.D.N.Y. July 20, 2015) (quoting *O'Sullivan*, 526 U.S. at 848). Therefore, we find that Carson did not exhaust his claim.

Further, Carson does not make an effective showing of cause and prejudice. Failure to exhaust may be excused if the petitioner shows cause and prejudice. *Powell v. Miller*, No. 98-CV-6286(CJS), 2001 WL 1708815, at *9 (W.D.N.Y. Nov. 5, 2001) (citing *Wainright v. Sykes*, 433 U.S. 72 (1977)). Under the Supreme Court's standard of cause and prejudice, "[t]he habeas petitioner must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady,* 456 U.S. 152, (1982)) (internal quotations omitted).

While he does cite several questionable assertions of the prosecutor during the state's summation that were not challenged by defense counsel, the conduct does not "infect the entire

trial." As discussed above, the alleged misconduct of the prosecutor does not reach constitutional proportions.

## CONCLUSION

For the foregoing reasons, Carson's application under 28 U.S.C. § 2254 is denied. The Clerk of the Court is hereby ordered to close this case. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Carson has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: January 27, 2020
      Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge